UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DESIREE GILBERG, on behalf of herself and others similarly situated,<br><br>               Plaintiff,<br><br>  v.<br><br>CHECKSMART FINANCIAL, LLC, a Delaware limited liability company,<br><br>               Defendant. | Case No. 2:15-CV-02309-JAM-AC<br><br>ORDER DENYING PLAINTIFF'S MOTION TO REMAND |

    In July 2015, Desiree Gilberg filed a suit against California Check Cashing Stores, Inc. and CheckSmart Financial, LLC ("CheckSmart") in Los Angeles Superior Court.  She alleged violations of the federal Fair Credit Reporting Act ("FCRA"), California's Consumer Credit Reporting Agencies Act ("CCRAA"), and the Investigative Consumer Reporting Agencies Act ("ICRAA"). Notice of Removal, ECF No. 1-3.  Defendants timely removed the case to the Central District of California, invoking the court's federal question jurisdiction. Id.  Ultimately, the parties transferred the case to this Court.  ECF No. 25.

1     In May 2017, Defendants filed a joint motion for summary
2 judgment.  ECF No. 49.  At the hearing, Plaintiff conceded her
3 second and fourth causes of action.  Tr. of June 6, 2016
4 Proceedings ("Tr.") 5:20-22, ECF No. 67.  The Court granted
5 Defendants' motion for summary judgment on the conceded claims and
6 on the disputed claims.  Tr. 19:24-20:4. On appeal, the Ninth
7 Circuit held the Court properly granted summary judgment on
8 Gilberg's second and fourth causes of action against CheckSmart and
9 on all of Gilberg's claims against California Check Cashing Stores.
10 Memorandum of USCA, ECF No. 69.  However, the Ninth Circuit found
11 this Court erred in granting summary judgment against Gilberg's
12 claims that CheckSmart violated the stand-alone document
13 requirement under both federal and state law.  Id.  It vacated this
14 Court's ruling accordingly.  Id.
15    Gilberg now requests the Court remand her case to state court,
16 arguing she lacks standing to bring her FCRA claim in federal
17 court.  Mot. to Remand ("Mot."), ECF No. 71.  CheckSmart filed an
18 opposition to Gilberg's motion.  Opp'n, ECF No. 75.  Gilberg
19 replied.  Reply, ECF No. 78.  For the reasons discussed below, the
20 Court DENIES Gilberg's motion.[1]
21
22                    I.   BACKGROUND
23    The parties are well-versed in the factual underpinnings of
24 this case.  The Court need not reproduce a statement of the
25 allegations at issue here.
26 ///
27
28 [1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for November 5, 2019.

2

II.   OPINION

A.   Legal Standard

Generally, when a United States district court has original jurisdiction over a case, defendants may remove civil actions filed in state court to the district court "embracing the place where [the suit] is pending." 28 U.S.C. § 1441(a). It is not enough, however, that the court have subject-matter jurisdiction at the time of removal—the court must retain its authority to adjudicate the case until it issues a final judgment. See 28 U.S.C. § 1447(c). Indeed, a federal district court must remand a case to state court "[i]f at any time before final judgment it appears that the [court] lacks subject matter jurisdiction." Id.

A party may raise objections to a federal court's subject-matter jurisdiction "at any time." Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 434-35(2011). Moreover, "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction." Id. at 434. The party claiming federal jurisdiction bears the burden of proving, by a preponderance of the evidence, the basis of the federal court's jurisdiction. Cohn v. Petsmart, Inc., 281 F.3d 837, 839 (9th Cir. 2002).

B.   Analysis

Gilberg argues this Court does not have subject-matter jurisdiction because she lacks standing to bring her FCRA claim. As an initial matter, CheckSmart's opposition makes much of the fact that Gilberg has litigated this case for four years without raising doubts about her standing to litigate in federal court. See Opp'n 1-7. The timing of Gilberg's objections, of course, has

1 no bearing on this Court's analysis.  See Henderson, 562 U.S. at
2 434-35.  The caselaw means what it says when it states a party
3 may, at any time, challenge subject-matter jurisdiction.  Id.
4      Standing doctrine arises out of Article III's "case or
5 controversy" requirement.  Mot. at 4-5.  Spokeo, Inc. v. Robins,
6 136 S. Ct. 1540, 1547 (2016).  It is well-established that the
7 "irreducible constitutional minimum of standing consists of three
8 elements."  Id. (internal quotations omitted).  A plaintiff must
9 have (1) suffered an injury in fact, (2) that is fairly traceable
10 to the conduct challenged, and (3) that is likely to be redressed
11 by a favorable judicial decision.  Id. (citing Lujan v. Defenders
12 of Wildlife, 504 U.S. 555, 550-61 (1992)).
13      Gilberg specifically contends she has not suffered an injury
14 in fact.  Mot. at 4-5.  To adequately allege injury in fact, a
15 plaintiff must "show that [she] suffered an invasion of a legally
16 protected interest that is concrete and particularized."  Spokeo,
17 136 S. Ct. at 1547 (internal quotations omitted).  An injury is
18 particularized when it "affect[s] the plaintiff in a personal and
19 individual way."  Id.  To be concrete, an injury "must actually
20 exist" – that is, it must be "real, and not abstract."  Id.
21 (citing Black's Law Dictionary 479 (9th ed. 2009); Webster's Third
22 New International dictionary 472 (1971); Random House Dictionary
23 of English Language 305 (1967)).  Notably, an injury can be "real"
24 even though it is intangible.  Id. at 1549.  Courts look to "both
25 history and the judgment of Congress" when assessing whether an
26 intangible harm is sufficiently concrete.  Id.
27      In Spokeo, the Supreme Court considered the intangible harm
28 caused by a violation of the FCRA's procedural requirements.  Id.

at 1545-46.  Spokeo declined to set forth extensive brightline rules on which procedural violations give rise to concrete injuries.  Rather, it recognized that determining when a procedural violation bears a sufficiently "close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit" depends upon the circumstances surrounding the violation.  Id. at 1549-50.  Since Spokeo, the Ninth Circuit has likewise adopted a case-by-case approach to deciding when a procedural violation of the FCRA constitutes an injury in fact. See Robins v. Spokeo, Inc., 867 F.3d 1108, 1116-17 (9th Cir. 2017); Syed v. M-I, LLC, 853 F.3d 492, 499-500 (9th Cir. 2017). This Court proceeds in tow.

On the facts of this case, Gilberg has standing to adjudicate her FCRA claims in federal court.  The Court finds it is bound by the case that Gilberg leaves unaddressed: Syed v. M-I, LLC, 853 F.3d 492 (9th Cir. 2017).  In Syed, the plaintiff sued his former employer for violating the FCRA's stand-alone document requirement.  Id. at 497-98 (citing 15 U.S.C. § 1681b(b)(2)). Section 1681b(b)(2)(A)(i) provides that before a consumer report may be procured for employment purposes, the person procuring it or causing it to be procured must make a "clear and conspicuous" disclosure to the consumer in a written document "that consists solely of the disclosure."  Syed argued that his employer violated this procedural requirement by including a liability waiver in its disclosure.  Syed, 853 F.3d at 499-500.  Before resolving the merits, the Ninth Circuit addressed whether the plaintiff suffered an injury in fact.  Id.  In doing so, the Court of Appeals found that the two subsections of Section 1681b(b)(2)(A) work in tandem

1 to create a right to information and a right to privacy.  Id. at
2 499.  It also found that when a defendant violates Section
3 1681b(b)(2)(A)'s procedural requirements in a way that deprives
4 consumers of their ability to "meaningfully authorize" consumer
5 reports, that violation results in an injury that is "real" and
6 "concrete."  See id.  Applying these principles to Syed, the Ninth
7 Circuit held that the allegations "indicate[d] that Syed was not
8 aware that he was . . . authorizing the credit check when he
9 signed it."  Id.  Indeed, drawing reasonable inferences in favor
10 of the nonmoving party, the Court inferred that "Syed was
11 confused . . . and would not have signed [the Pre-employment
12 Disclosure Release] had it contained a sufficiently clear
13 disclosure, as required by the [FCRA]."  Id. at 499-500.
14      Until her most-recent motion, Gilberg, like Syed, maintained
15 that CheckSmart's noncompliance with Section 1681b(b)(2)(A)
16 prevented her from understanding the company's disclosure and
17 authorization form.  As CheckSmart argues, Gilberg testified in
18 her deposition that (1) "she may not have understood that a credit
19 check could be performed" when she signed the release; (2) she
20 "fe[lt] like [her] personal life ha[d] been violated without [her]
21 knowledge"; and (3) she would not have signed the release when she
22 did had she understood that she was authorizing Defendant to
23 obtain a background report.  See Opp'n at 9-10 (citing Exh. 1 to
24 Snider Decl. ("Plf. Depo.") 20:24, 20:3, 23:1-4, ECF No. 75-1).
25      Gilberg does not refute the similarities between this case
26 and Syed identified in CheckSmart's opposition.  Rather, she
27 suggests the Court should disregard her deposition testimony
28 because a plaintiff cannot concede standing or otherwise waive

subject-matter jurisdiction. Reply at 3. To be sure, no party may waive Article III's requirements as a matter of law. But this reality does not grant parties carte blanche to renege on representations that once served as the factual basis for the Court's jurisdiction. Gilberg's deposition testimony is not tantamount to a conclusively-binding judicial admission. See Snapp v. United Transportation Union, 889 F.3d 1088, 1104 (9th Cir. 2018). But it is nonetheless evidence that aids CheckSmart in satisfying its burden of proof at this stage. See id.

The cases Gilberg cites in support of remand either predate or meaningfully differ from Syed. See Mot. at 4-5 (citing inter alia Williams v. Nichols Demos, Inc., No. 5:17-cv-07101-EJD, 2018 WL 3046507 (N.D. Cal. 2018); Lee v. Hertz Corp., No. 15-cv-04562-BLF, 2016 WL 7034060 (N.D. Cal. Dec. 2, 2016); Larroque v. First Advantage LNS Screening Sols, Inc., No. 15-cv-04684-JSC, 2016 WL 4577257 (N.D. Cal. Jan. 4, 2016)). In Williams, for example, the Northern District of California remanded an FCRA claim to state court after finding the plaintiff failed to allege injury in fact. 2018 WL 3046507, at *5. In arriving at that decision, however, the Court specifically distinguished the plaintiff's allegations from those in Syed, finding she had neither alleged that "she was 'confused' by the disclosure" nor that "she would not have signed the authorization had it been presented separately from the waiver." Id. Indeed, the harm in Williams embodied the very type of "procedural violation divorced from a concrete harm" that Spokeo disavowed. See Spokeo, 136 S. Ct. at 1549. The concreteness of Gilberg's injury, on the other hand, is supported by her own deposition testimony. With this evidence in mind, the

Court finds CheckSmart proved by a preponderance of the evidence that Gilberg has standing to sue.  It therefore DENIES Gilberg's motion to remand.

### III.   ORDER

For the reasons set forth above, the Court DENIES Gilberg's motion to remand.

IT IS SO ORDERED.

Dated: December 11, 2019

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE